UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04263-TAB-TWP |
| | ) |
| ANDREW M. SAUL Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff appeals the Social Security Administration's denial of her application for supplemental security income.  Seeking remand, Plaintiff argues that the Administrative Law Judge erred by selectively reviewing evidence concerning Plaintiff's neck and back problems, inaccurately assessing the intensity, persistence and limiting effects of Plaintiff's symptoms, and failing to include any manipulative limitations in the residual functional capacity assessment and in the hypothetical questions posed to the vocational expert.  As explained in more detail below, the ALJ's decision is supported by substantial evidence.  Therefore, Plaintiff's request for remand [Filing No. 11] is denied.

1

**II.     Background**

Plaintiff filed an application for a period of disability and disability insurance benefits. The SSA denied her claim initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 4, 2016. At step two, the ALJ found that Plaintiff had the following severe impairments: neuropathy and anxiety. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> Occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling. [Plaintiff] has the mental capacity to understand, remember and follow simple instructions. Within these parameters and in the context of performing routine tasks, the claimant is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence. There should be no transactional interaction with the public.

[Filing No. 9-2, at ECF p. 18.]

At step four, the ALJ determined that Plaintiff had no past relevant work. At step five, the ALJ found, in considering Plaintiff's age, education, work experience, and residual functional capacity, that jobs existed in significant numbers in the national economy that Plaintiff could perform, including: retail marker, routing clerk, and office helper. [Filing No. 9-2, at ECF p. 23-24.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III.    Discussion**

Plaintiff argues on appeal that the ALJ committed reversible error by (1) selectively reviewing evidence of Plaintiff's cervical and lumbar degenerative disc disease and resulting pain; (2) discounting Plaintiff's credibility regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms; and (3) not including any manipulative limitations in Plaintiff's residual functional capacity assessment and in her hypothetical questions to the vocational expert. [Filing No. 11, at ECF p. 3.] This Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

**A.    Plaintiff's cervical and lumbar degenerative disc disease**

Plaintiff first argues that the ALJ erred by selectively reviewing evidence concerning Plaintiff's cervical and lumbar degenerative disc disease and resulting pain. [Filing No. 11, at ECF p. 12.] Plaintiff contends that the ALJ did not address her cervical and lumbar degenerative disc disease in a balanced manner and failed to discuss material, conflicting evidence. [Filing No. 11, at ECF p. 13.] Plaintiff cites *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), which held that an ALJ is required to review all evidence that does not support the ALJ's conclusion.

Plaintiff points to the omission of evidence related to Dr. Kozarek's reports from 2014-17. [Filing No. 11, at ECF p. 14-15, 17-18.] Plaintiff also notes that the ALJ only mentioned normal findings from a January 2016 examination. [Filing No. 11, at ECF p. 14.] She argues that the ALJ did not expressly list all of the findings from the February 2, 2016, MRI. [Filing No. 11, at ECF p. 15.] Plaintiff believes that the ALJ misinterpreted an April 13, 2016, visit to nurse practitioner Kimberly Johnson, arguing that Plaintiff went for a cardiovascular examination and that the observations relating to Plaintiff's neck and back pain should not hold as much weight. [Filing No. 11, at ECF p. 15.] Plaintiff also mentions the ALJ's omission of some evidence from Dr. Zapinski's June 7, 2016, examination. [Filing No. 11, at ECF p. 15-16.] She notes that the ALJ failed to include every observation from Dr. Nieters's examination. [Filing No. 11, at ECF p. 16-17.] Plaintiff also calls attention to the ALJ's failure to include Dr. Eskonen's and Dr. Whitley's determinations that Plaintiff's back pain is a severe impairment. [Filing No. 11, at ECF p. 17.] Finally, Plaintiff points out that the ALJ did not mention Plaintiff's continued Norco use. [Filing No. 11, at ECF p 18.]

Plaintiff cites *Indoranto* to explain that an ALJ must review all evidence contrary to the ALJ's decision; however, in *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013), the Seventh Circuit has held that "an adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." Requiring the ALJ to describe every observation concerning Plaintiff's back problems from every doctor Plaintiff has visited would unreasonably burden the ALJ. The ALJ discussed Plaintiff's back impairments throughout her decision. She noted that Plaintiff had alleged disability due to spinal stenosis, among other things. [Filing No. 9-2, at ECF p. 18.] She mentioned Plaintiff's November 25, 2015, x-rays showing lower degenerative spondylosis and a small right subligamentous posterior disc extrusion with small

craniad migration at L4-L5.  [Filing No. 9-2, at ECF p. 14.]  The ALJ cited Plaintiff's February 2, 2016, MRI, which showed "small to moderate sized chronic central disc extrusions at C5-C6 and C6-C7 levels; mild spondylosis; and mild straightening of the normal cervical lordosis." [Filing No. 9-2, at ECF p. 14.]  The ALJ acknowledged that "[i]n April 2016, [Plaintiff] had negative straight leg raises and was noted as having chronic back pain."  [Filing No. 9-2, at ECF p. 14.]  She discussed Plaintiff's June 2016 MRI that showed "some significant straightening of lordosis[.]"  [Filing No. 9-2, at ECF p. 14.]  The ALJ mentioned Plaintiff's consultative examination in July 2016 showing Plaintiff "had reduced range of motion of the cervical and lumbar spine" and "spasms at 1+ in the thoracic and lumbar region[.]"  [Filing No. 9-2, at ECF p. 14.]  The ALJ also noted that Plaintiff's "radiological studies of the cervical and lumbar spine show[ed] some degenerative disc disease[.]"  [Filing No. 9-2, at ECF p. 20.]  Although the ALJ did not discuss every piece of medical evidence that was contrary to her finding that Plaintiff did not have a severe back impairment, the ALJ adequately discussed Plaintiff's back impairment by referring to medical evidence contained in the record.

### B. Evaluation of Plaintiff's intensity, persistence, and limiting effects of Plaintiff's symptoms

Plaintiff next argues that the ALJ's analysis of the intensity, persistence, and limiting effects of her symptoms was patently wrong.  [Filing No. 11, at ECF p. 19.]  "So long as an ALJ gives specific reasons supported by the record [the Court] will not overturn his credibility determination unless it is patently wrong."  *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Plaintiff believes that the ALJ's mistakes and omissions made when evaluating her neck and back pain from the first issue affected the credibility analysis.  [Filing No. 11, at ECF p. 20.] As discussed previously, the ALJ adequately addressed Plaintiff's back and neck issues.

5

Plaintiff next contends that the ALJ improperly concluded that her lack of nerve root impingement in her spine, lack of surgery for spinal issues, and lack of actual treatment on her spine meant that Plaintiff's back pain allegation was not credible. [Filing No. 11, at ECF p. 20-22.] Plaintiff cites *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), which held that an ALJ "must not succumb to the temptation to play doctor[.]" [Filing No. 11, at ECF p. 21.] But the ALJ has done no such thing concerning Plaintiff's lack of nerve root impingement and lack of treatment. In making a credibility determination, "[a]n ALJ should consider elements such as objective medical evidence of the claimant's impairments . . . and treatment (including medication)." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (internal quotation marks omitted). Additionally, the Court looks at the ALJ's decision and reads it as a whole. *See, e.g.*, *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004).

Plaintiff's brief gives no clarification concerning her lack of treatment, and the record contains no explanation for Plaintiff's lack of treatment. The ALJ explained that Plaintiff "has normal gait and muscle strength" in the same paragraph as her reference to Plaintiff's lack of nerve root impingement, surgery, and treatment. [Filing No. 9-2, at ECF p. 20.] In the paragraphs preceding the ALJ's conclusion, she discussed Plaintiff's July 15, 2016, examination where Plaintiff "denied any gait disturbance joint swelling and muscle weakness. [Filing No. 9-2, at ECF p. 19.] The ALJ also discussed Plaintiff's July 26, 2016, consultative examination where Plaintiff "had no difficulty arising from a chair to the examination table" and "was able to walk on heels, walk on toes, and squat." [Filing No. 9-2, at ECF p. 19.] In addition, the ALJ mentioned that Plaintiff "had some spasms at 1+ in the thoracic and lumbar region." [Filing No. 9-2, at ECF p. 19.] Finally, the ALJ pointed out again that in during a January 16, 2017, examination Plaintiff "denied having . . . gait disturbance, joint swelling, [and] muscle

6

weakness." [Filing No. 9-2, at ECF p. 19.] These references to the medical evidence, including Plaintiff's normal gait and muscle strength, show that the ALJ considered the evidence as a whole when evaluating Plaintiff's alleged pain. By mentioning Plaintiff's lack of nerve root impingement and back treatment, the ALJ was not playing doctor, but rather explaining additional facts in her credibility analysis.

Plaintiff next argues that the ALJ erred by describing some of Plaintiff's daily activities, but not questioning or disputing Plaintiff's testimony about them. [Filing No. 11, at ECF p. 23.] Plaintiff cites *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), holding that a plaintiff's ability to perform daily activities does not necessarily translate into an ability to work full-time. [Filing No. 11, at ECF p. 22.] The ALJ addressed Plaintiff's concern and wrote, "While [Plaintiff's daily] activities are not being compared to actual work situations, I do not consider evidence regarding [Plaintiff's] daily activities as sufficient to establish that [Plaintiff] is unable to function at the level I have assessed." [Filing No. 9-2, at ECF p. 23.] The ALJ also imposed additional limitations to what Drs. Eskonen and Whitely recommended, signifying that the ALJ reasonably considered all of the evidence, including Plaintiff's daily activities. *See, e.g.*, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("[The ALJ's finding] was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [the plaintiff] presented.").

In sum, the ALJ's analysis of the intensity, persistence, and limiting effects of Plaintiff's symptoms was not patently wrong.

### C.      Manipulative limitations in Plaintiff's residual functional capacity

Finally, Plaintiff argues that the ALJ improperly omitted Plaintiff's manipulative limitations in her residual functional capacity assessment and in the hypothetical question posed to the vocational expert.  In her brief, Plaintiff cites evidence in the record concerning her alleged manipulative limitations.  [Filing No. 11, at ECF p. 26-27.]  While it is true that an ALJ must include all of the plaintiff's limitations supported by the medical record in the RFC assessment and the hypothetical posed to the VE, the ALJ in this case determined that Plaintiff's alleged manipulative limitations are not supported by the medical record.  *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.")  "[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."  *Burmester*, 920 F.3d at 511 (internal citation omitted).  The ALJ "evaluated the medical opinions in making the residual functional capacity determination."  [Filing No. 9-2, at ECF p. 21.]

Although Drs. Eskonen and Whitley found Plaintiff's carpal tunnel syndrome to be severe, both determined that Plaintiff did not have manipulative limitations.  [Filing No. 9-3, at ECF p. 9, 22.]  Drs. Eskonen and Whitley limited Plaintiff to light work.  [Filing No. 9-3, at ECF p. 11, 24.]  The ALJ noted that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in [the ALJ's] decision."  [Filing No. 9-2, at ECF p. 21.]  The ALJ acknowledged that Plaintiff "reported having difficulties with . . . using her hands" and that she had "taken [this] matter into account in assessing [Plaintiff's] residual functional capacity." [Filing No. 9-2, at ECF p. 54.]  The ALJ determined that "[a]s to the [Plaintiff's] functional

limitations, the record establishes none that are inconsistent with [her] decision." [Filing No. 9-2, at ECF p. 21.] The ALJ reasonably relied on the opinion of medical experts and did not err by failing to include any manipulative limitations in the residual functional capacity assessment or in the hypothetical questions posed to the vocational expert.

## IV.     Conclusion

Plaintiff failed to show any error with the ALJ's decision concerning Plaintiff's cervical and lumbar degenerative disc disease analysis, the evaluation of the intensity, persistence, and limiting effects of Plaintiff's symptoms, and Plaintiff's manipulative limitations. The ALJ's findings were supported by substantial evidence.  Therefore, Plaintiff's request for remand [Filing No. 11] is denied and the Commissioner's decision is affirmed.

Date: 7/17/2020

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email